IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 4:25-00201-01-CR-W-BP |
|---|---|
| Plaintiff, | **COUNTS ONE and TWO:** |
| v. | *[Wire Fraud]* |
| TIFFANIE FOSTER, [DOB: 8/3/1976] | 18 U.S.C. §1343 |
| | NMT 20 Years' Imprisonment |
| | NMT $250,000 Fine |
| | NMT 3 Years' Supervised Release |
| | Class C Felony |
| Defendant. | |
| | $100 Mandatory Special Assessment per count |

I N D I C T M E N T

THE GRAND JURY CHARGES THAT:

**Introduction**

**I.    THE PAYCHECK PROTECTION PROGRAM AND PANDEMIC UNEMPLOYMENT ASSISTANCE**

1.    On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), an economic stimulus bill that, among other things, provided emergency assistance to small business owners and nonprofit organizations in all U.S. states, Washington D.C., and territories affected by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). Additional PPP funding was authorized in legislation enacted on or about December 27, 2020, and March 11, 2021.

2.    The PPP program, which is operated by the Small Business Administration ("SBA"), provided small businesses with funding to meet specific business obligations, including payroll and rent. The PPP permitted participating third-party lenders to approve and disburse SBA-

backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans are fully guaranteed by the SBA. Further, SBA will forgive any loan up to 100 percent if the borrower establishes it utilized 60 percent of the loan on payroll costs in the 24-week period post-disbursement, with the remaining 40 percent going toward covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures. Whatever portion is not forgiven is serviced as a loan.

3. The SBA promulgated regulations concerning eligibility for a PPP loan. Individuals who operated a business under a "sole proprietorship" business structure were eligible for a PPP loan. To qualify for such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the Internal Revenue Service on a "Form 1040, Schedule C," for a given tax year. As with other PPP loans, this information and supporting documentation was used to calculate the amount of money the individual was entitled to receive under the PPP. The maximum loan amount for a sole proprietor with no employees was $20,833.00.

4. A PPP loan application was processed by the third-party participating lender with whom the application was filed. If a PPP loan application was approved, the participating lender would fund the PPP loan; to encourage PPP loans to be issued, the loan was guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA while processing the loan.

5. The CARES Act also created a Pandemic Unemployment Assistance ("PUA")

program to assist individuals experiencing unemployment or underemployment due to the pandemic. The PUA provided temporary benefits for self-employed workers, including independent contractors and gig workers, for up to 39 weeks. Those eligible for PUA benefits could also receive additional supplemental payments of $600 under the Federal Pandemic Unemployment Compensation program.

## The Scheme

6. On or about February 10, 2021, in the Western District of Missouri, the defendant, TIFFANIE FOSTER, who lived in Kansas City, Missouri, completed and sent an application and supporting documents to Itria Ventures, LLC, to apply for a PPP loan under the CARES Act for her business.

7. The application and supporting documents stated that the defendant was the owner of a business named Exotic Indiscretions, LLC, and used her own social security number for the business. FOSTER included a 2019 tax Form 1040 Schedule C with her application which listed gross receipts or sales of $152,675 and a profit of $6,311. The Form 1040 Schedule C the defendant filed with her 2019 taxes indicated different amounts including $1,350 in gross receipts or sales and a net loss of $1,032. FOSTER also submitted a bank statement from January of 2020 indicating she had a combined total of $11,825.84 in both her business checking and business savings accounts. Bank records showed her actual combined balance for January 2020 was $0.36 indicating the statement she provided with her application was altered. The full amount of the PPP loan, $20,833, was deposited via wire transfer from Itria Ventures, LLC into a Mazuma Credit Union account ending in X2828 on March 26, 2021. Itria Ventures, LLC is in New York, New York while Mazuma Credit Union is headquartered in Overland Park, Kansas.

8. On July 4, 2020, FOSTER submitted an application for unemployment benefits in the state of Michigan which included PUA benefits. The application provided her a fraud warning indicating that it is considered fraud if a false statement is made in the application or information is concealed to obtain the benefits. FOSTER affirmed her understanding of this fraud warning on the application. She indicated on the application that she was a resident of Michigan and was unemployed due to the pandemic, when in fact, she was residing in the Western District of Missouri and working full-time for the Social Security Administration. FOSTER also indicated on her application that she had not applied for unemployment benefits in any other state. In fact, she had applied for unemployment benefits in the state of Missouri on May 11, 2020. FOSTER received unemployment benefits from March 28, 2020, through September 4, 2021, from Michigan for a total of $34,960.00. These benefits were deposited from the state of Michigan into FOSTER'S account via electronic direct deposit with Pathward National Bank which is located in Sioux Falls, South Dakota.

## COUNT ONE

The allegations set forth in paragraphs 1 through 8 are hereby incorporated in full.

9. On or about March 26, 2021, in the Western District of Missouri, the defendant, TIFFANIE FOSTER, having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce a deposit of $20,833 from Itria Ventures, LLC into her account.

All in violation of the provisions of Title 18, United States Code, Section 1343.

## COUNT TWO

The allegations set forth in paragraphs 1 through 8 are hereby incorporated in full.

  10. On or about September 14, 2021, in the Western District of Missouri, the defendant, TIFFANIE FOSTER, having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce an unemployment benefit payment of $460.00 from the state of Michigan into her bank account.

All in violation of the provisions of Title 18, United States Code, Section 1343.

A TRUE BILL.

Dated: June 27, 2025
   Kansas City, Missouri

*SIGNATURE ON FILE WITH USAO*
FOREPERSON OF THE GRAND JURY

*/s/Amanda K. Hanson*
Amanda K. Hanson
Special Assistant United States Attorney